Kenneth R. MYERS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0507–CR–327.

Court of Appeals of Indiana.

June 13, 2006.

Nikos C. Nakos, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Kenneth R. Myers, the former personal representative of the estate of his uncle, John Powner, appeals the amount of restitution that the trial court ordered him to pay to Powner's estate following his guilty plea to Perjury,[1] a class D felony, regarding his theft of funds from the estate. Specifically, Myers claims that the amount was excessive because a portion of the restitution had already been repaid to the estate as the result of a judgment that had been entered against him in a civil matter.

While we conclude that the trial court properly ordered Myers to make restitution, the total amount reflected in the order—$101,672.97—must be offset by $68,000, which is the amount that the estate has recouped from Myers in the civil judgment regarding his theft of the estate funds. Thus, we affirm the trial court's decision to order restitution, but we remand with instructions that the trial court modify the restitution order to reflect a total amount of $33,672.97.

1. Ind.Code § 35–44–2–1.

## FACTS

Myers was the sole heir and the former personal representative of Powner's estate. At some point between 2001 and 2002, while serving as personal representative, Myers perjured himself regarding his disposition of estate funds. Specifically, in June 2001, Myers testified that he had used over $75,000 of estate funds to pay personal bills. Myers also testified in September 2002 that he had given over $65,000 of the estate funds "to people on the street." Appellant's Amended App. p. 12. It was alleged that Myers had embezzled various funds from the estate by placing large amounts of stock and money into his wife's name and into various businesses that he had created.

The State charged Myers with perjury and theft. Thereafter, on March 22, 2004, Myers pleaded guilty to perjury in exchange for the State's dismissal of the theft count. The sentencing recommendation set forth in the plea agreement provided that Myers would pay restitution for perjury as well as the theft charge.

At the sentencing hearing, Ward Miller, the successor personal representative of Powner's estate, testified that he was able to "trace some $101,672.97 that Mr. Myers stole from the ... estate." Tr. p. 9. Miller acknowledged that the estate had "made some recoveries from Mr. Myers," but that those funds had been applied to a treble damages judgment that had been entered against Myers in a civil suit that the estate had brought against him. Tr. p. 9. In particular, the evidence showed that $51,000 had been paid to purge Myers from a civil contempt charge. Miller specifically confirmed that the estate had recouped these funds, along with $13,000 from the sale of Myers's real estate by a trustee in bankruptcy court and $4,000 that had been seized from a bank account.

When Myers was sentenced, the trial court found that Myers had lied about the disposition of the funds and, as "a result of Myers's perjury, the estate was out $101,672 and change." Tr. p. 14. Thus, the trial court ordered restitution in this amount, and Myers now appeals.

## DISCUSSION AND DECISION

Myers contends that the trial court erred in ordering him to pay restitution in the amount of $101,672.97. Specifically, Myers argues that this amount should have been offset by $68,000, which represents the amount that the estate had already recovered from him in the civil action. Therefore, Myers argues that the trial court should have ordered him to pay only $33,672.97 in the restitution order.

In resolving this issue, we first note the relevant provisions of our restitution statute, Indiana Code section 35–50–5–3:

> [I]n addition to any sentence imposed under this article for a felony or misdemeanor, the court may ... order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of: (1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)....

█ In construing this statute, this court has determined that the amount of restitution ordered must reflect the actual loss incurred by the victim. *Little v. State*, 839 N.E.2d 807, 810 (Ind.Ct.App.2005). Moreover, the entry of a restitution order is within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion. *Green v. State*, 811 N.E.2d 874, 877 (Ind.Ct.App.2004). An abuse of discretion occurs when the trial court misinterprets or misapplies the law. *Id.*

In support of Myers's position that the amount of restitution should have been offset by the funds he paid toward the satisfaction of the civil judgment, he directs us to *Haltom v. State*, 808 N.E.2d 761 (Ind.Ct.App.2004). In *Haltom*, the victim, who was seriously injured when the defendant crashed his vehicle while driving while intoxicated, signed an agreement that provided for the release and discharge of the defendant from any and all past, present, and future claims, damages, and demands that arose from the injuries he sustained as the result of the defendant's actions. *Id.* at 763. We held that the victim's execution of a release of all claims in exchange for a settlement payment of $100,000 from the defendant's insurer precluded the trial court from subsequently ordering restitution in the amount of $27,956.99 to pay for the victim's medical expenses and lost earnings. *Id.* at 764.

■ However, our Supreme Court subsequently granted transfer in *Haltom* and determined that while criminal courts are *permitted* to take note of agreements entered into in civil court, such settlements do not prevent a criminal court from ordering restitution. *Haltom v. State*, 832 N.E.2d 969, 972 (Ind.2005). More specifically, the *Haltom* court noted that

> By our holding today, we do nothing to constrain the ability of parties to settle civil disputes prior to the commencement or conclusion of collateral criminal proceedings. Parties remain free to enter into agreements to settle civil matters, and we are confident that they will do so. But the civil courts, not the criminal courts, are the proper venue to adjudicate these matters. *See Ramsey v. Hicks*, 174 Ind. 428, 91 N.E. 344, 354 (1910) (noting that it is the prerogative of the civil courts to determine the meaning and legal effect of civil contracts). An aggrieved party, including a criminal defendant, remains free to seek enforcement of the terms of a release in civil court. Our criminal courts are permitted to take note of these agreements in deciding whether to order restitution and in what amount, but these agreements in no way preclude a criminal court from ordering restitution when appropriate under statute.

*Id.* In essence, the *Haltom* court upheld a restitution order in the amount of the victim's medical expenses and lost earnings even though the victim had also received $100,000—the limit of Haltom's policy—from Haltom's insurer. *See also Crawford v. State*, 770 N.E.2d 775, 781 (Ind.2002) (holding that civil settlements have no bearing on decisions of criminal punishment, and imposition of a restitution order is a form of punishment and part of a criminal sentence). We are mindful, however, that elementary principles of tort law command that a plaintiff is entitled to only one recovery for a wrong. Thus, payments that are made in partial satisfaction of a claim must be credited against the remaining liability to prevent a double recovery. *Manns v. State Dep't of Highways*, 541 N.E.2d 929, 933 (Ind.1989), *superseded by statute on other grounds*.

■ Turning to the circumstances here, we note that there was no agreement or release between Powner's estate and Myers that affected the amount of restitution that was due in the criminal matter. However, the evidence presented at the sentencing hearing established that Myers had made payments toward the satisfaction of the civil judgment that had been ordered against him. Tr. p. 9. Specifically, the successor personal representative acknowledged that the funds that had been recouped by the estate have been applied toward the penalty portion of the civil judgment entered against Myers. Appellant's Amended App. p. 34. The estate collected $13,000 from the sale of the real

estate, and $4,000 had been seized from a bank account. Appellant's App. p. 8, 21. And it was further established that the largest portion of the amount that had been paid—$51,000—was used to "to purge the Defendant from a civil contempt charge relative to a Superior Court Order." Appellant's Br. p. 6, 9. As a result, because it was shown that the estate had already recouped a total of $68,000 that Myers was ordered to pay as a result of the civil judgment that had been entered against him, the restitution order must be offset by that amount so as to prevent a recovery by the estate over and above its actual loss. *See Manns*, 541 N.E.2d at 933. Therefore, although we affirm the trial court's decision to order restitution in the case, we must remand the cause to the trial court with instructions that it modify its order to reflect a credit to Myers in the amount of $68,000, which represents the amount that he has already paid to the estate in satisfaction of the civil judgment that had been entered against him. Hence, on remand, the trial court should enter an order reducing the amount of restitution in this matter to a total of $33,672.97.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for a modification of the restitution order.[2]

MAY, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

The restitution ordered in this case was tied specifically and exclusively to the conviction for perjury. The perjury for which Myers was convicted was for lying "about disposition of the funds" which he had misappropriated. The misappropriation itself was the subject matter of the theft charge which was dismissed as a part of the plea bargain.

I do not read the plea bargain as does the majority. In other words, I do not see that it provides that "Myers would pay restitution for perjury as well as the theft charge." Op. at 1109. Rather the plea agreement covered "Restitution as appropriate." App. at 24.

I do not view that restitution for the perjury is "appropriate." The funds for which Myers was ordered to make restitution were not lost to the estate by Myers's lying about his disposition of those funds. Rather they were lost by reason of the misappropriation itself.

It is well established that restitution may be ordered only where the injury, harm or loss is "a *direct and immediate result*" of the criminal act. *Reinbold v. State*, 555 N.E.2d 463, 470 (Ind.1990), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 570 (Ind.1995) (emphasis supplied); *Martin v. State*, 784 N.E.2d 997, 1014 (Ind.Ct.App.2003); *Utley v. State*, 699 N.E.2d 723, 729 (Ind.Ct.App. 1998), *trans. denied.*

The loss to the estate here was not a direct and immediate result of Myers's perjury. I would reverse and remand with instructions to vacate the restitution order.

---

2. As an aside, we note that if there is further dispute regarding the allocation of the particular funds that Myers has paid toward the satisfaction of the civil judgment, the resolution of such disputes are better left to the trial court in the civil matter. Similarly, we leave it to the trial court in the civil cause to discern whether any additional funds that Myers has paid toward the satisfaction of that judgment should work as a further "credit" to Myers.