## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 23 2016, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Philip H. Chamberlain
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Philip H. Chamberlain,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 23, 2016<br><br>Court of Appeals Case No.<br>53A04-1507-CR-1016<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Teresa D. Harper, Judge<br><br>Trial Court Cause No.<br>53C09-0805-FC-480 |

**Vaidik, Chief Judge.**

# Case Summary

[1] After this Court remanded this case to the trial court to determine the amount of restitution, if any, the victim was entitled to for Philip H. Chamberlain's counterfeiting conviction, the trial court revised the amount of restitution from $15,000 to $10,000.

[2] Chamberlain now appeals the trial court's revised restitution order, contending that the court credited the victim's testimony over his and that the court should have ordered him to pay the amount to the victim's company, and not to the victim individually. Because the victim testified that Chamberlain still owed him $10,000 and the victim was the sole member of the now-dissolved limited-liability company, we conclude that the trial court did not abuse its discretion in ordering Chamberlain to pay $10,000 in restitution to the victim individually.

# Facts and Procedural History

[3] In May 2008 the State charged Chamberlain, an Indiana attorney,[1] with five felonies stemming from his involvement in securing investors for the development of a southern Indiana golf course owned by Dwight Hart.[2]

---

[1] Chamberlain received an interim suspension of his law license pending resolution of this appeal. *See In re Chamberlain*, Cause No. 53S00-1303-DI-191 (Ind. June 11, 2013 & June 2, 2014).

[2] It is unclear whether Hart or Hart's company owned the golf course, but this does not affect our decision.

[4]     After four years of delays and continuances, in October 2012 Chamberlain and the State entered into a plea agreement in which Chamberlain agreed to plead guilty to Amended Count I: Class D felony counterfeiting, which alleged that "between September 1, 2006 and May 2007 . . . Chamberlain[] did knowingly or intentionally make or utter a written instrument, in such a manner that it purports to have been made by authority of one who did not give authority." Appellant's App. p. 49. The basis for this conviction was a $36,750 check that investor Shannon Ramey wrote to Hart's company, JRock Capital Investment Group LLC ("JRock LLC"), on April 1, 2007; Hart was the only member of JRock LLC. Ramey gave Chamberlain the check to give to Hart. But instead of giving the check to Hart, Chamberlain, without Hart's authority, endorsed the check in the name of JRock LLC and signed his name underneath as "director" even though he was not a director. The next day, Chamberlain, again without authority, split the check into two cashier checks: one for $26,750 and the other for $10,000. Chamberlain gave the $26,750 check to Hart, representing that it was the full amount from Ramey, and deposited the $10,000 check into the bank account of Hillcrest Shoppes, in which Chamberlain had an ownership interest. *See* Oct. 19, 2012 Tr. p. 17-23 (factual basis).

[5]     Pursuant to the plea agreement, the trial court had discretion to: (1) enter judgment as a Class D felony or Class A misdemeanor; (2) determine the length of the sentence; and (3) determine the amount, if any, of restitution. The trial court accepted the plea agreement and entered judgment of conviction as a Class D felony. The court sentenced Chamberlain to 540 days, suspended to

probation, and 120 hours of community service. The court explained that upon successful completion of probation, Chamberlain's Class D felony could be reduced to a Class A misdemeanor.[3]

[6] At the restitution hearing, the State stipulated that it would not seek more than $16,750 in restitution, which was based upon the $10,000 that Chamberlain kept from Ramey's $36,750 check, a $5000 loan that Chamberlain never repaid to Hart, and a $1750 fee that Chamberlain claimed Hart owed to Ramey's company but that Chamberlain kept for himself. Chamberlain, who represented himself, testified that he gave Hart a cashier's check for $25,500 in 2008 (after the investigation into his dealings began but before he was officially charged) and that this $25,500 check covered the $10,000 that he kept from Ramey's $36,750 check. Hart, however, testified that as a result of his dealings with Chamberlain, he ended up paying $124,000—including paying back Ramey the full $36,750—and that even with Chamberlain's $25,500 check he was still short $44,103. The trial court ordered Chamberlain to pay $15,000 in restitution to Hart.

[7] Chamberlain appealed, arguing that the trial court erred in ordering him to pay $15,000 in restitution to Hart. He made several arguments, including that the $15,000 amount erroneously included the $5000 unpaid loan because the loan was not covered by Amended Count I and that the trial court failed to credit

---

[3] Indeed, the trial court reduced Chamberlain's Class D felony conviction to a Class A misdemeanor in June 2014.

him for the $25,500 check he gave Hart. We explained that unless a defendant agrees, a restitution order cannot be based on an incident for which the defendant was not convicted. *Chamberlain v. State*, No. 53A01-1305-CR-247, slip op. at 8 (Ind. Ct. App. Apr. 16, 2014). And notably, Chamberlain did not agree to pay more than the amount his counterfeiting conviction covered; rather, Chamberlain maintained that he did not owe any restitution to Hart because the $25,500 check he gave Hart in 2008 covered the $10,000 that he kept from Ramey's $36,750 check. *Id.* But because we did not have the transcript from Chamberlain's guilty-plea hearing, we could not tell what written instrument Amended Count I covered. In addition, we could not tell if the trial court credited Chamberlain with the $25,500 check he gave Hart in 2008. Accordingly, we vacated the restitution order and remanded with the following instructions:

> But because we do not have the transcript from Chamberlain's guilty-plea hearing, we cannot consult the factual basis for his counterfeiting conviction to see what written instrument it covered. Without this information, we cannot determine the amount of restitution, if any, Hart is entitled to after taking into account that Chamberlain has already paid Hart $25,500. We must therefore remand this case to the trial court for it to determine the amount of restitution, if any, Hart is entitled to for the counterfeiting conviction only, taking into consideration Chamberlain's $25,500 payment to Hart.

*Chamberlain*, No. 53A01-1305-CR-247 at 8-9.

[8] On remand, the trial court did not hold a hearing but issued a detailed, six-page order in February 2015. In its order, the court set forth the conflicting testimony from Chamberlain and Hart at the restitution hearing regarding the $10,000 that Chamberlain kept from Ramey's $36,750 check and whether Chamberlain's $25,500 check to Hart in 2008 covered that $10,000. It then concluded:

> The Court now amends its restitution order to $10,000. Mr. Chamberlain took Mr. Ramey's $36,750 check and divided it into two checks, one for $26,750 which he gave to Mr. Hart and one for $10,000 which he deposited into the account of Hillside Shop[pes], his own business. *The Court does not believe the record establishes that this $10,000 was repaid.*

Appellant's Amended Br. p. 32 (emphasis added). Chamberlain filed a motion to correct error raising numerous issues. In denying the motion, the court reaffirmed that Chamberlain's $25,500 check to Hart did not cover the $10,000:

> Defendant gave Mr. Hart the [$25,500] check when he was unaware Defendant had taken $10,000. . . . By arguing that he had covered the $10,000 check he had deposited into his own account, Defendant is picking and choosing which debt was covered. Because Mr. Hart was "in the dark" about the money Defendant had diverted, he was not aware that Defendant believed he had paid it back. Defendant is deciding what debt was paid because Mr. Hart was unaware of Defendant's wrongdoing.
>
> The Court after weighing the evidence and judging the credibility of the witnesses found that the amount of the check, the subject

of the counterfeiting conviction, was not covered by Defendant's check and was properly owing to Mr. Hart as restitution.

*Id.* at 36.

[9] Chamberlain, pro se, now appeals.

# Discussion and Decision

[10] Chamberlain contends that the trial court erred in ordering him to pay $10,000 in restitution to Hart.[4]

[11] A trial court has the authority to order a defendant convicted of a crime to make restitution to the victim of the crime. *Smith v. State,* 990 N.E.2d 517, 520 (Ind. Ct. App. 2013), *trans. denied.* The amount of a victim's loss is a factual matter that can be determined only on presentation of evidence. *Id.* An order of restitution is a matter within the trial court's discretion. *Sickels v. State*, 982 N.E.2d 1010, 1013 (Ind. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In determining whether the trial court has abused

---

[4] Hart also contends that the trial court did not follow our instructions on remand. To the contrary, the trial court complied with our instructions by determining whether the counterfeiting conviction included the $5000 unpaid loan and by taking into consideration Chamberlain's $25,500 payment to Hart. The trial court found that Amended Count I did not cover the $5000 unpaid loan and that the $25,500 check did not cover the $10,000.

its discretion, we neither reweigh evidence nor judge witness credibility. *Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009).

[12] Chamberlain does not contest that as a result of his dealings with Hart, Hart ended up paying $124,000 or that he was still short $44,103. Rather, Chamberlain argues that the $25,500 check he gave Hart in 2008 covered the $10,000 that was the basis of his counterfeiting conviction. As the trial court explained, when Chamberlain gave Hart the $25,500 check, Hart did not know that Chamberlain had diverted the $10,000. Because Hart was "left in the dark" about the diverted $10,000, the court concluded that Chamberlain could not pick and choose what debt his $25,500 check covered. In arguing that the court gave "greater weight" to Hart's testimony than his testimony by failing to credit his $25,500 check to the $10,000, *see* Appellant's Amended Br. p. 9, Chamberlain is asking us to reweigh the evidence and reject Hart's testimony, which we will not do. Accordingly, the trial court did not abuse its discretion in ordering Chamberlain to pay $10,000 in restitution.

[13] Chamberlain also argues that the trial court erred in ordering him to pay the $10,000 in restitution to Hart individually, as opposed to Hart's now-dissolved limited-liability company. It is true that Ramey wrote the $36,750 check to JRock LLC and not to Hart individually. However, it is also true that Hart was the only member of JRock LLC. But as the trial court noted in its order denying Chamberlain's motion to correct error, Chamberlain "did not sufficiently develop this issue during the at least seven hours of hearings on sentencing and restitution. . . . The Court considers the issue waived for his

failure to raise it and support it during the sentencing/restitution hearings." Appellant's Amended Br. p. 35 n.1.

[14] Any waiver notwithstanding, we find that because Hart was a victim of Chamberlain's crime, the trial court properly ordered Chamberlain to make restitution to Hart individually, and not to JRock LLC. Indiana Code section 35-50-5-3(a) provides that a court may order a defendant "to make restitution to the victim of the crime." The record shows that Hart was indeed a victim of the counterfeiting conviction: Hart was the sole member of JRock LLC, which operated the golf course; Ramey agreed to loan money "to Mr. Hart doing business as JRock" for purposes of developing the golf course, Jan. 29, 2013 Tr. p. 13; Hart filed for bankruptcy in 2009 or 2010 and has never returned to the golf course; and when Hart paid back the $124,000, he did so individually and not as JRock LLC. In addition, according to the Indiana Secretary of State's website, JRock LLC was administratively dissolved in 2008.[5] Based on these considerations, the trial court did not abuse its discretion in ordering Chamberlain to pay $10,000 in restitution to Hart individually.

[15] Affirmed.

Barnes, J., and Mathias, J., concur.

---

[5] *See* Indiana Secretary of State, Business Services Division, *Business Search*, https://bsd.sos.in.gov/PublicBusinessSearch/BusinessInformation?businessId=671423 (search conducted May 4, 2016).